**FERRY–MORSE SEED CO.,**
**Plaintiff/Appellee,**

**v.**

**FOOD CORN, INC.,**
**Defendant/Appellant.**

No. 83–1385.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1983.
Decided March 19, 1984.

Shook, Hardy & Bacon, Gene E. Voigts, Richard E. McLeod, Kansas City, Mo., for plaintiff/appellee.

Paden, Welch, Martin, Albano & Graeff, P.C., Michael W. Manners, Independence, Mo., for defendant/appellant.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Food Corn, Inc. appeals from a preliminary injunction ordering that it turn over six to seven thousand bags of seed corn to Ferry-Morse Seed Company. Food Corn argues that the district court[1] abused its discretion in entering the order because there was insufficient evidence that Ferry-Morse would suffer irreparable injury and Ferry-Morse failed to prove that it was likely to succeed on the merits of an arbitration claim. We affirm the order of the district court.

Ferry-Morse brought this action against Food Corn to compel arbitration under an exclusive license agreement between the two parties and for a preliminary injunction in aid of arbitration. Food Corn had developed a white-cob, yellow-kernel seed corn which Ferry-Morse desired to market commercially. Ferry-Morse had marketed the seed corn in the first part of 1982 under a less formal agreement with Food Corn and entered into the exclusive license agreement in July, 1982. The agreement gave Ferry-Morse the sole right to market Food Corn's new strain of food corn. The agreement provided that Food Corn was to be paid royalties based on a percentage of the retail price, which was defined as the "per unit list price of the seed corn sold by Ferry-Morse." The underlying dispute between the parties revolved around the meaning of the term "retail price." Ferry-Morse was extremely interested in the food corn product because it gave it an opportunity to get into a new market ahead of competitors without years of research that would otherwise be necessary. There were no alternative sources of supply from which Ferry-Morse could obtain the food corn seed.

A hearing was held on the motion for a preliminary injunction, and on February 17,

1. The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

the district court entered a preliminary injunction ordering Food Corn not to market the hybrid seed corn or any other items subject to the exclusive license agreement to any party other than Ferry-Morse, and to refrain from other acts as provided in the exclusive license agreement.[2] In granting the preliminary injunction, the district court found that Ferry-Morse would suffer irreparable harm if deprived of the opportunity to market the unique seed corn and found that Ferry-Morse was likely to prevail on the merits.[3]

Ferry-Morse then sought a further order compelling Food Corn to deliver the seed corn under the terms of the contract, and after a hearing on March 10, 1983, the court entered an order[4] modifying the preliminary injunction entered February 17 by adding a paragraph that Food Corn "promptly ... deliver seed corn to plaintiff as required by the exclusive license agreement." The court's order requiring Food Corn to deliver the seed corn was based on its findings that Food Corn would not be able to adequately market the seed corn itself and allowing Ferry-Morse to continue marketing the seed corn would serve the economic interests of both parties.[5]

Food Corn argues that a substantially heavier burden rests upon a party seeking

2. The February 17 order of the district court provided that Food Corn comply with other terms of the exclusive license agreement, including the following:
    that Food Corn not reveal to anyone other than Ferry-Morse the underlying plasms, inbreds or foundation seeds necessary to produce the hybrid corn seed subject to the exclusive license agreement, that Food Corn perform the covenant not to compete and the fail-safe agreement appended to the exclusive license agreement, and that it not sell, alienate or compromise the seed corn program or take any action intended or reasonably likely to impair Ferry-Morse's efforts to develop and serve the market for the seed corn under the exclusive license agreement.

3. The findings of the district court that are particularly critical to this appeal are as follows:
    First, plaintiff has sufficiently demonstrated that it will suffer irreparable harm if, during the pendency of these proceedings or arbitration proceedings if they should ensue, it is deprived of the opportunity to market the seed corn which is the subject of the agreements at issue here. The seed corn is unique and not available from other sources. If defendant disposes of the technology involved in the production of the seed corn, the favorable marketing position which induced plaintiff to expend substantial sums of money will be destroyed. Plaintiff is unable to duplicate the seed corn development without extensive research and, according to Mr. Henderson's testimony, as much as eight years of cross-breeding. At this time, competitors of plaintiff are developing similar strains of corn and will be able to deprive plaintiff of the currently open market. The immediate need for this relief is shown by the testimony of Mr. Henderson, who stated that to make deliveries for the 1983 growing season, the seed corn needs to be in the hands of farmers by the middle of April. The evidence indicates that the packaging and processing time required by plaintiff

after it gets the seed corn and before it delivers the seed corn to farmers is at least thirty days. The need for immediate action is obvious....
    The current action pending is one to compel arbitration, and sufficient evidence was presented showing the existence of an arbitration agreement and its enforceability to allow the court to determine that there are substantial questions presented as to the issue. In the absence of controverting evidence from defendant, the court will assume that plaintiff is likely to prevail on the merits.

4. As the March 10 order continued and modified the preliminary injunction, it is an appealable order under 28 U.S.C. § 1292(a)(1) (1976); see Movie Systems, Inc. v. Mad Minneapolis Audio Distributors, 717 F.2d 427, 430 (8th Cir. 1983); Sperry Corp. v. Minneapolis, 680 F.2d 1234, 1237 (8th Cir.1982).

5. The district court's findings in its March 10 order were as follows:
    [The president of Food Corn] testified that defendant's efforts to market the seed corn under its own name would be impaired immeasurably if delivery to plaintiff were required. On the other hand, his testimony indicated that defendant's ability to market the corn for 1983 in the short time remaining is problematic at best. Most farmers have already reserved seed corn for the coming growing season. Defendant does not have an extensive distribution and sales network. In addition, the corn is presently stored in bulk, and it would be necessary to clean, sort, test, and bag it prior to sale. In contrast, plaintiff has the resources necessary to market the corn in the 1983 growing season.
    It is the decision of the court that defendant should be required to deliver to plaintiff the seed corn it now holds. The court believes this result serves the interests of both plaintiff

to obtain a mandatory injunction rather than simply a prohibitory injunction, and that Ferry-Morse failed to show substantial evidence of irreparable harm and any probability that it will succeed on the merits of its claim for arbitration.

We have recently clarified the standards to be considered in granting or denying a preliminary injunction. In *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981), we stated:

> ■ In sum, whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

Our particular inquiry is whether in granting a preliminary injunction the district court abused its discretion. *Dataphase*, 640 F.2d at 114. *See also Planned Parenthood v. Citizens for Community Action*, 558 F.2d 861, 866 (8th Cir.1977).

■ The district court made the required analysis under the *Dataphase* standard, and its conclusions on irreparable harm and probability of success on the merits are the only issues before us. The findings with respect to irreparable harm are supported by evidence in the record and are not clearly erroneous. The seed corn was found to be unique and the competitive disadvantage Ferry-Morse would suffer if it did not obtain the seed demonstrate a classic situation for preliminary injunctive relief. *See Payroll Express Corp. v. Aetna Casualty and Surety Co.*, 659 F.2d 285, 292 (2d Cir.1981); *Campbell Soup Co. v. Wentz*,

172 F.2d 80, 82 (3d Cir.1948); D. Dobbs, *Handbook on the Law of Remedies* § 12.-18 (1973).

A more troublesome issue is the probability of success requirement. The findings of the district court are here somewhat more tenuous, but as observed in *Dataphase*, "where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less." 640 F.2d at 113. The district court specifically found that there was sufficient evidence to show the existence of an arbitration agreement and its enforceability to allow it to conclude that there was a substantial question presented as to that issue. It pointed to the lack of any controverting evidence from Food Corn. While the court went on to state that it "will assume that plaintiff is likely to prevail on the merits," we do not read this as eroding its conclusion that the elements of the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1976) had been proven and that arbitration would thus be compelled.[6] We cannot conclude that the district court erred in its determination that the case was arbitrable and in its further determination that without an injunction the efficacy of an eventual order compelling arbitration might be drastically impaired.

■ Food Corn argues that because the underlying issue is one of fraud in the inducement, which is not arbitrable as a matter of law, Ferry-Morse did not meet its burden of showing that it would ultimately prevail on its claim to compel arbitration. The district court was not persuaded that Food Corn's allegations of fraud were sufficient to bar arbitration.[7] Even where

---

and defendant. Plaintiff will be able to proceed with its marketing plans; defendant will derive income from the seed corn and minimize its losses and expenses. Defendant will be permitted to retain the foundation seed now in its possession, which will enable it to preserve the secrecy of the origin of the seed corn.

**6.** A federal court must compel arbitration if (1) there is a contract involving commerce; (2) there is a controversy arising out of that con-

tract; (3) the contract calls for arbitration; and (4) there has been a refusal to comply with the arbitration provision. 9 U.S.C. §§ 2 & 3.

**7.** The district court commented as follows:

And frankly I guess I would have a little better feeling for this man if I had any idea what the basis of his claim of fraud is except for the fact he just disagrees on the interpretation of some of the language that was put into the contract. I don't see what it is they did to him that defrauded him.

there exists a valid fraud claim falling outside the scope of the arbitration clause, arbitration should be compelled if the arbitrator's decision could render the fraud claim moot. *See Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir.1979). Food Corn claims it was deceived as to the meaning of "retail price." Should an arbitrator determine that Ferry-Morse's definition is correct, Food Corn's fraud claim would be moot.

■ Food Corn also argues that more stringent requirements govern the granting of a mandatory preliminary injunction than a prohibitory preliminary injunction. *See Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir.1980); *Citizens Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d 1289, 1299 (10th Cir.1980), *cert. denied*, 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981); *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir.1976). While these general statements have been made by courts, some, such as in *Martinez*, have granted mandatory relief. The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief. *Crowley v. Local No. 82*, 679 F.2d 978, 995 (1st Cir.1982). While the granting of preliminary injunctions is not favored unless the right to such relief is clearly established, 11 C. Wright and A. Miller, *Federal Practice & Procedure* § 2942, at 368, where the status quo is a condition not of rest, but of action, and the condition of rest (in this case the refusal to deliver the seed corn) will cause irreparable harm, a mandatory preliminary injunction is proper. *Crowley*, 679 F.2d at 995–96; *Canal Authority v. Callaway*, 489 F.2d 567, 576 (5th Cir.1974); D. Dobbs, *supra*, § 2.10. We view this as a case where mandatory relief could properly be found to be necessary to prevent irreparable harm to plaintiff. *See Crowley*, 679 F.2d at 994–97; *Guinness-Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468, 472–73 (2d Cir.1980); Wright & Miller, *supra*, § 2942, at 377.

■ In this case Ferry-Morse had been marketing the Food Corn seed just as it had the year before. It was this status quo that was destroyed by the action of Food Corn, and we cannot conclude that the district court abused its discretion in restoring the earlier relationship by requiring that Food Corn turn over the seed corn. The record in this case makes particularly appropriate the following statement:

> Other courts have granted preliminary relief without regard to establishing the status quo, as long as there was a showing of potential irreparable harm, and at other times, as long as the injunction creates a common sense modus vivendi to keep peace between the contracting parties, and avoids unnecessary economic waste until the case is adjudicated.

*Unicon Management Corp. v. Koppers Co.*, 366 F.2d 199, 204 (2d Cir.1966) (citations omitted). As the district court found, the delivery of the seed corn to Ferry Morse will avoid economic waste and, at least to some extent, serve the interests of both parties.

We affirm the order of the district court modifying its preliminary injunction and ordering the delivery of the seed corn.