857 F.Supp. 654 (1994)
Edward Leo POTTGEN, Plaintiff,
v.
The MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, Defendant.
No. 4:94-CV-00591 CAS.
United States District Court, E.D. Missouri, Eastern Division.
April 29, 1994.
*655 *656 *657 Kenneth M. Chackes, Vines and Ross, St. Louis, MO, for plaintiff.
Mallory Mayse, Columbia, MO, for defendant.

MEMORANDUM
SHAW, District Judge.
This matter is before the Court on plaintiff's motion for a preliminary injunction, on which evidence and oral argument was heard April 18 and 19, 1994. Also before the Court is defendant's Motion to Dismiss. The Court has now reviewed all of the written and oral evidence presented by the parties, and concludes that plaintiff's motion for preliminary injunction should be granted.
This matter arises out of plaintiff's claim that defendant, the Missouri State High School Activities Association ("MSHSAA"), has violated (i) Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"); (ii) § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"); and (iii) 42 U.S.C. § 1983, by its refusal to allow him to participate in interscholastic athletics in the 1993-1994 school year under MSHSAA By-Law 232.0 because he is nineteen (19) years of age.
Plaintiff previously sought and obtained a temporary restraining order from this Court, J. Limbaugh presiding, which restrained MSHSAA from preventing plaintiff from competing in Hancock's baseball game scheduled for March 23, 1994, and from imposing any penalty, discipline or sanction on any school for which or against which plaintiff competed. As this matter could not be heard within the time contemplated by Federal Rule of Civil Procedure 65, the parties consented to and the Court ordered the extension of the temporary restraining order until the hearing on the preliminary injunction.

Findings of Fact
1. Plaintiff Leo Edward Pottgen was born on May 25, 1974, and is a nineteen (19) year old student at Hancock High School ("Hancock") in St. Louis County, Missouri.
2. Defendant MSHSAA is a voluntary, non-profit, private association of member secondary school districts public and private, which has the capacity to be sued in its association name. MSHSAA adopts standards for the uniform regulation of junior high and high school interscholastic activities as delegated by its approximately 730 member schools. MSHSAA is administered by an eight-member Board of Directors (the "Board") comprised of school superintendents and principals.
3. MSHSAA is governed by a Constitution and By-Laws, which are adopted and amended by vote of its member schools, with each member school having one vote. (Defendant's Exh. A.)
4. MSHSAA By-Law 821.0 authorizes the Board to appoint an Appeals Committee (the "Committee") to hear and render decisions on appeals, including the eligibility of students to participate in athletic programs. Appeals from decisions of the Committee are to the Board under MSHSAA By-Law 825.0.b.
5. MSHSAA does not directly receive federal funds, but it does receive funding from its member schools. Ninety percent of MSHSAA's member schools are public and receive federal funds.
6. Plaintiff has been diagnosed with a learning disability. Plaintiff was retained in grades one and three because of educational problems. An evaluation after the second retention revealed that plaintiff had a learning disability, behavior disorder, and a language impairment in auditory comprehension.
7. Because plaintiff repeated two grades in elementary school due to his disabilities, he entered his fourth (senior) year of high school at age nineteen. Plaintiff will turn twenty (20) years of age on May 25, 1994.
8. Plaintiff's mother, who died three years ago, utilized plaintiff's participation in school sports, particularly baseball, as motivation to help him overcome his learning disability. Plaintiff's grades and attitude in school improved as a result of his participation in interscholastic sports.
*658 9. Prior to his senior year, plaintiff competed in three (3) years of basketball and baseball, and two (2) years of cross country.
10. Plaintiff wished to compete in basketball, cross country and baseball in his senior year, but MSHSAA declared him ineligible to complete in interscholastic activities during the 1993-1994 school year under By-Law 232.0, because he reached his nineteenth birthday prior to the July 1 preceding his senior year.
11. MSHSAA By-Law 232.0, Age Standards, provides as follows:
A student shall not have reached the age of 19 prior to July 1 preceding the opening of school. If a student reaches the age of 19 on or following July 1, the student may be considered eligible for the ensuing school year.
To be eligible for junior high school competition against teams all in a particular grade classification, the student shall not have reached the following ages prior to July 1 preceding the opening of school: Grade Seven  14, Grade Eight  15, or Grade Nine  16. If a student does not meet the age standard for a particular grade classification, that student may compete on a team of a higher grade classification. Seventh and eighth grade students shall not compete with or against students in grade 10 or above except in cases where they attain the age of 15 prior to July 1 preceding the opening of school and their school does not sponsor a separate ninth grade team in the sport concerned, or where they attain the age of 16 years prior to July 1 preceding the opening of school.
12. Because of his age, plaintiff is ineligible to compete in interscholastic activities during the 1993-1994 school year under By-Law 232.0. Plaintiff's birthdate places him only thirty-five (35) days beyond the cut-off date provided in By-Law 232.0.
13. The purpose of By-Law 232.0 is threefold: (i) To disallow competitive advantage to teams using older athletes against teams with younger athletes; (ii) to protect younger athletes from harm; and (iii) to discourage student athletes from delaying their education to gain athletic maturity and experience.
14. Article VI, § 6.p. of the MSHSAA Constitution authorizes the Board "to grant eligibility to a student in a case that is beyond the control of a student or his (her) parents, which in the opinion of the Board involves undue hardship or an emergency and does not violate the intent of any standards of eligibility." (Defendant's Exh. A, p. 12.)
15. Plaintiff, with the assistance of Hancock Assistant Principal Ed Stewart, petitioned MSHSAA in October 1993 for another year of eligibility to compete in interscholastic athletics for the 1993-1994 school year. (Plaintiff's Exh. 2.)
16. Plaintiff's petition was presented to the MSHSAA Appeals Committee in November 1993 by Mr. Stewart, and plaintiff's father, Charles Pottgen. Among the evidence presented was the fact that plaintiff was retained in two grades in elementary school before a proper diagnosis was made of plaintiff's learning disability and other disabilities. (Plaintiff's Exh. 2; Defendant's Exh. C.)
17. The Committee voted to deny plaintiff's petition, for the reason that "waiving the Age Standard contained in By-Law 232 by the committee would be waiving the intent for which the rule was voted in by the member schools and would not be applied consistently from one student to the next under the true purpose for which the rule was adopted." (Defendant's Exh. C.) In a letter to Mr. Stewart officially notifying him of the Committee's decision, MSHSAA's Executive Director stated, "From the discussion of this case, it was apparent that the Committee believed that to waive the By-Law would have been waiving the actual intent of the rule itself." (Plaintiff's Exh. 7.) The Committee did not mention plaintiff's disability in its decision.
18. Plaintiff appealed the Committee's decision to the Board, and submitted additional documentary evidence concerning his disability. (Plaintiff's Exh. 3, 4.) Mr. Stewart appeared before the Board in January 1994 and described plaintiff's educational history and diagnosis of learning disability, noting *659 that plaintiff (i) had no control over the fact that he did not receive the special educational services he needed for academic success until after two retentions; (ii) had made steady improvement since receiving special services; (iii) would not exceed the limit of eight semesters of participation if allowed to play; (iv) was not physically advanced for his age; and (v) was not in high school any longer than any other student in the high school grades. (Plaintiff's Exh. 4; Defendant's Exh. D.) Stewart also stated that participating in baseball helped plaintiff to "maximize his capabilities". (Plaintiff's Exh. 4.)
19. The Board voted to deny plaintiff's appeal. The minutes of the Board's meeting at which plaintiff's appeal was presented state, "It was pointed out during the hearing that the Age Standard has remained consistent throughout the years. It is necessary for the intent and consistency of this rule to remain intact must be (sic) applied the same to all students." (Defendant's Exh. D.) The appeal was denied "based upon the need for having an absolute application of the Age Standard in order to allow consistency for all students." Id. The Board officially denied plaintiff's appeal by letter dated March 14, 1994. (Plaintiff's Exh. 8.) The Board did not mention plaintiff's disability in its decision.
20. The Board's decision to deny plaintiff's appeal was based solely on the Board's judgment that an age limit is the only fair way to address the issue of competitive advantage, although competitive advantage is only one of three concerns underlying the age standard. In making its decision, the Board did not consider the other two concerns, safety and the discouraging of academic delay for the purpose of gaining athletic maturity.
21. The MSHSAA has never allowed a waiver of the age standard although there have been other requests for such a waiver. The MSHSAA has in some instances allowed the waiver of its transfer rule, academic rule and other rules.
22. Plaintiff's appeal rights under MSHSAA have been exhausted.
23. Plaintiff is approximately five feet eight inches tall and weighs approximately one hundred sixty (160) pounds. Witness Dr. Richard L. Seip, a physiologist, testified that there is generally very little physical variability between eighteen- to twenty-year old males. More significantly, Dr. Seip tested plaintiff's hand grip strength, an indicator of overall strength, and found it to be below average for plaintiff's age.
24. Plaintiff is an outfielder and pitcher on Hancock's baseball team. As a pitcher, plaintiff is capable of throwing a sixty (60) mile-per-hour plus fastball, although some high school pitchers are able to throw ninety (90) mile-per-hour fastballs.
25. Plaintiff does not present a safety hazard to other, younger high school baseball players.
26. Plaintiff has not purposely delayed his education in order to gain athletic maturity and experience.
27. Although MSHSAA By-Law 232.0 provides that an eighth-grade student who is fifteen (15) years of age or older may compete on a team of a higher grade classification, plaintiff was unaware of this provision, and was never presented the option of playing on a high school team while he was in the eighth grade. Further, no eighth-grade student at Hancock has ever played on a team of a higher grade classification, and such an occurrence would in fact be contrary to established policy of the St. Louis County schools.
28. Any potential competitive advantage claim is de minimis inasmuch as neither plaintiff nor Hancock held plaintiff out of competition a year (i.e. "red-shirted" him) in order to obtain an advantage. Further, plaintiff is a good baseball player, not a superior one. Plaintiff tried out for the Metro Collegiate summer league twice during the Summer of 1993, but was not selected.
29. Hancock is part of the Hancock Place School District, and is a member of the MSHSAA. Hancock has 390 students and is classified as a 3A school.[1] Hancock's baseball *660 team won the 1993 3A Baseball Championship. Plaintiff maintained a season batting average of .378 in the 1992-1993 season, and often batted in the number four "clean-up" position, although he did not hit any home runs.
30. As of the date of the hearing herein, Hancock is undefeated in baseball and plaintiff has played in all of its games. Plaintiff has batted in the number four position in each game, and his batting average this year is approximately .450, although he has hit no home runs. In a game against Westminster Christian Academy, plaintiff pitched a three-hitter and was the game's winning pitcher.
31. Plaintiff has been contacted by junior colleges as a result of his baseball-playing skills.
32. Plaintiff cannot afford to attend college without some form of financial assistance.
33. Plaintiff's chances of being offered a junior college athletic scholarship will be greatly reduced if he does not play baseball at Hancock during the 1993-1994 school year.

Conclusions of Law
The Court has jurisdiction of this matter under 28 U.S.C. § 1331 as this action arises under the laws of the United States; and under 28 U.S.C. § 1343(a) as this action is brought pursuant to 42 U.S.C. § 12131, 29 U.S.C. § 794, and 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) as this matter arose within the Eastern District of Missouri.
In determining whether a preliminary injunction should issue, the Court must consider the following four factors:
(i) The threat of irreparable harm to the movant;
(ii) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant;
(iii) the probability that movant will succeed on the merits; and
(iv) the public interest.
Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir.1981). In essence, the inquiry becomes whether considerations of justice and equity demand that the status quo be maintained until resolution of the merits. Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 370 (8th Cir. 1991); Dataphase, 640 F.2d at 113. The burden of proving these prerequisites is on the party seeking injunctive relief. United States v. Dorgan, 522 F.2d 969, 973 (8th Cir.1975).
The first factor the Court must consider is the threat of irreparable harm to the movant. If the preliminary injunction is not issued, plaintiff will miss his last opportunity to play high school baseball. This is an opportunity which can never be repeated, and which cannot be adequately replaced by monetary damages.
While there is no fundamental right or property right to participate in high school athletics, sports can be very important to young persons, especially those with disabilities. Several courts have found irreparable harm to and granted preliminary injunctions to students with disabilities, allowing them to complete in interscholastic athletic events after they had previously been declared ineligible. See Doe v. Marshall, 459 F.Supp. 1190 (S.D.Tex.1978), vacated and remanded on other grounds, 622 F.2d 118 (5th Cir.), cert. denied sub nom. Marshall v. Doe, 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981); Booth v. University Interscholastic League, 1990 WL 484414, No. A-90-CA-764 (W.D.Tex. October 4, 1990); University Interscholastic League v. Buchanan, 848 S.W.2d 298 (Tex.App.1993).
Further, according to the testimony of plaintiff and his high school baseball coach Mr. Stewart, several junior colleges have expressed an interest in plaintiff and if plaintiff does not play baseball during his senior year, he would have little chance of obtaining a scholarship.
The Court concludes that plaintiff has demonstrated he will be irreparably harmed *661 if he is not allowed to participate in Hancock's baseball program during his senior year.
The Court next addresses the balance between the harm to plaintiff if the preliminary injunction is not granted and the injury that granting the injunction will inflict on MSHSAA. While it has been shown the harm to plaintiff is irreparable, the relative harm to MSHSAA is minimal. The Court concludes the balance of harm to plaintiff if the preliminary injunction is not granted greatly exceeds the injury that granting the injunction will inflict on MSHSAA.
MSHSAA's argument focuses primarily on the increased administrative burden and expense which it predicts will result if plaintiff is allowed to play baseball. MSHSAA claims that it will be deluged with requests for individual consideration if plaintiff is exempted from the age rule. However, no evidence was presented as to how many students might seek a waiver of the age requirement on the basis of disability. As previously discussed, the MSHSAA Constitution and By-Laws include a procedure by which waivers of MSHSAA rules may be obtained. MSHSAA is already subject to requests for individual consideration, and has been called upon to grant waivers of its rules in the past. The Court concludes that this would not impose undue financial or administrative burdens on MSHSAA, and that MSHSAA would not be required to fundamentally alter its organizational scheme.
MSHSAA also predicts undue administrative burden will result from protests filed by other teams which Hancock may defeat in post-season tournament(s). As with potential requests for waiver, the MSHSAA Constitution and By-Laws contain provisions by which games may be protested and/or forfeited. Thus, MSHSAA has administrative procedures already in place for handling any protests which may (or may not) be filed. There is no basis for the Court to conclude that MSHSAA cannot, without undue burden, evaluate requests for waiver and protests as they may arise on an individual basis.
Finally, MSHSAA argues it is unfair to other athletes and teams to allow plaintiff to play, because of his superior abilities. The Court has previously found that any competitive advantage is de minimis. MSHSAA also urges the consideration of safety factors, arguing that plaintiff poses a risk of harm to other high school athletes. However, the Court has found that plaintiff does not pose an increased safety risk, and previously noted that MSHSAA did not consider the issue of safety when it ruled on plaintiff's application for waiver.
The Court next considers the probability that plaintiff will succeed on the merits. Where a plaintiff shows irreparable injury and the equities strongly favor it, the degree of probability of success on the merits that must be shown is less. In such a case, the plaintiff need only present a substantial question. See Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 592 (8th Cir.1984); Dataphase, 640 F.2d at 113.
Plaintiff's claims are brought under (i) Title II of the ADA, 42 U.S.C. § 12132; (ii) § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and (iii) 42 U.S.C. § 1983.
Americans with Disabilities Act. Title II of the ADA, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."
The first inquiry is whether MSHSAA is a "public entity" within the meaning of the ADA. The definition of "public entity" in the ADA includes, in addition to state or local governments, "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). MSHSAA was created by and is funded by Missouri secondary schools, primarily public schools.[2] Its members are Missouri secondary schools, and its Board members are secondary school superintendents or principals. *662 The schools have delegated to MSHSAA the responsibility of supervising and regulating interscholastic activities, including determining which students are eligible to compete in such activities. The Court concludes that the MSHSAA is an instrumentality of a State or local government, and is thus a "public entity" subject to the provisions of the ADA.
The next inquiry is whether plaintiff is a "qualified individual with a disability." The ADA defines "disability" to mean: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The ADA regulations define "physical or mental impairment" to include "[a]ny mental or psychological disorder such as ... specific learning disabilities." 28 C.F.R. 35.104. The regulations define "major life activities" to include "learning". Id. As plaintiff has been diagnosed with a learning disability, the Court concludes he has a disability under the ADA.
The next inquiry is whether plaintiff is a "qualified individual with a disability" as defined by the ADA. The ADA defines this phrase to mean "an individual with a disability, who, with or without reasonable modifications to rules, policies, or practices, ... meets the essential eligibility requirements for the ... participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).
Plaintiff meets all of the MSHSAA eligibility requirements for participation in interscholastic activities except the age standard. The most compelling justification for the age standard is the desire to protect the safety of younger athletes against whom an older athlete might compete.[3] Where an eligibility requirement involves a question of safety, participation in the activity may be denied only if the individual "poses a direct threat to the health or safety of others." 28 C.F.R. Part 35, Appendix A, Section-by-Section Analysis, Section 35.104, p. 448. Appendix A requires that the determination whether a person poses a direct threat to the health or safety of others be "based on an individualized assessment" to determine the nature and severity of the risk, and the probability of potential injury. Id.
The Court has previously found that neither the Committee nor the Board considered the issue of safety or made an individualized review of plaintiff's circumstances in denying plaintiff's request for waiver and the appeal therefrom. The Court has also found, based upon the evidence submitted, that plaintiff does not appear to constitute a threat to the safety of others.
The determination as to plaintiff's status as a "qualified individual with a disability" under the ADA depends on whether MSHSAA is required to modify its age standard to accommodate plaintiff. Under ADA regulations, public entities are obligated to make reasonable modifications and to waive unnecessary eligibility requirements:
(7) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of desirability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.
(8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.
28 C.F.R. 35.130(b).
Accordingly, plaintiff would be a "qualified individual with a disability" entitled to the *663 protection of the ADA unless MSHSAA can prove that modifying the age standard (i) would fundamentally alter the nature of the service, program, or activity it provides; or (ii) is necessary for the provision of the service, program, or activity being offered. As previously discussed, it does not appear that modifying the age standard with regard to plaintiff would fundamentally alter the nature of MSHSAA's services, programs or activities, or that the age standard as applied to plaintiff is necessary for the provision of MSHSAA's services, programs or activities.[4]
The Court concludes that modifying the age standard to allow plaintiff to play would be a "reasonable modification" required under the ADA. With this modification to the age standard, plaintiff would be an "otherwise qualified individual with a disability" under the ADA who has been excluded from participation in the activities of a public entity. Accordingly, based on the present record before the Court, the Court concludes plaintiff has shown a high probability he would succeed on the merits of his claim under the ADA. Moreover, the Court's determination is only provisional, with the purpose of the preliminary injunction being simply to prevent irreparable harm during the period before a trial on the merits can be held. 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2950, p. 498 (1973).
Rehabilitation Act of 1973. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, protects an "individual with handicaps" who is "otherwise qualified" from being excluded from participation in a federally-assisted program "solely" on the basis of his or her handicap. Courts have recognized that to provide access to a program or activity, the Rehabilitation Act requires "reasonable accommodations" to be made for an individual with a disability. Alexander v. Choate, 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985).
First, the Court must determine whether MSHSAA is a federally-assisted program. As previously noted, MSHSAA is not a direct recipient of federal funding, but receives funding from its member schools, most of which are direct recipients of federal funding. It has been held that a program which indirectly receives federal funds may be subject to the requirements of the Rehabilitation Act. See Jacobson v. Delta Airlines, Inc., 742 F.2d 1202, 1212 (9th Cir.), cert. denied, 471 U.S. 1062, 105 S.Ct. 2129, 85 L.Ed.2d 493 (1985). The Court concludes that MSHSAA is a "federally-assisted program" within the meaning of the Rehabilitation Act, as it receives federal funds indirectly through its members, which delegate to it a portion of their responsibilities for regulation of interscholastic activities.
The next inquiry is whether plaintiff is an "individual with handicaps" under the Rehabilitation Act. The definition of "an individual with handicaps" under Section 504 is the same as the definition of "an individual with a disability" under the ADA. See 29 U.S.C. § 706(8)(B). Therefore, the Court concludes plaintiff is an individual with handicaps within the meaning of the Rehabilitation Act and is entitled to its protection. Accord Booth v. University Interscholastic League, No. A-90-CA-764, slip op. at 5-6, 1990 WL 484414 (W.D.Tex.1990).
The next inquiry is whether plaintiff is an "otherwise qualified" handicapped individual who has been excluded from participation in a federally-assisted program "solely" because of his handicap. As discussed supra, plaintiff is qualified to participate in interscholastic athletics except that he does not meet the age standard.
*664 MSHSAA argues that plaintiff is not being denied participation on the basis of his learning disability at all, but rather solely on the basis of its neutral, uniformly-applied age standard. Thus, MSHSAA states that plaintiff is not "otherwise qualified." MSHSAA relies on several decisions to support its argument, including Sadler v. University Interscholastic League, No. A-91-CA-836 (W.D.Tex. Nov. 25, 1991)[5]; Cavallaro by Cavallaro v. Ambach, 575 F.Supp. 171 (W.D.N.Y.1983); and Mahan v. Agee, 652 P.2d 765 (Okla.1982). In Cavallaro, the Court stated that "it would seem by definition" that a nineteen year-old student claiming a past handicap is not "otherwise qualified" because of an age standard. 575 F.Supp. at 175; accord Mahan, 652 P.2d at 768.
Plaintiff argues he is being denied the right to compete in interscholastic athletics because he has reached the age of nineteen, and that he is older than other high school seniors solely because of his disability, which required that he be retained for two years during his early education. Plaintiff contends the issue is not whether he meets all of the eligibility criteria, but rather the extent to which MSHSAA is required to make reasonable modifications to accommodate the needs of an individual with disabilities. The Court agrees. Plaintiff relies on Alexander v. Choate, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661; Kohl By Kohl v. Woodhaven Learning Center, 865 F.2d 930, 936 (8th Cir. 1989); and Booth v. University Interscholastic League, No. A-90-CA-764.
The Court finds the reasoning of Booth v. University Interscholastic League persuasive. In Booth, a Texas district court addressed a factual situation very similar to the instant matter. The Court noted that under the Supreme Court's decision in Alexander v. Choate, questions as to whether an individual is "otherwise qualified" and whether he is a victim of "discrimination" within the meaning of the Rehabilitation Act are "closely intertwined":
Such determinations should be made by focusing on `the ultimate question,' which is `the extent to which a grantee is required to make reasonable modifications in its program for the needs of the handicapped.'
Booth, slip op. at 8, quoting Alexander, 469 U.S. at 299 n. 19, 105 S.Ct. at 719 n. 19.
The Court in Booth rejected the Cavallaro and Mahan decisions, noting that under their analysis, any student who failed to meet requirements as a result of a past handicap is not "otherwise qualified" and thus not protected by the Rehabilitation Act. The Court found this result undermined the policies Congress sought to advance on behalf of the disabled, and ignored the obligations of recipients of federal funding to make "reasonable modifications" in order to accommodate the needs of the disabled. Slip Op. at 7-8.[6]
In assessing the likelihood that plaintiff will prevail on the merits, the Court must focus on the relative interests of the plaintiff and MSHSAA to determine whether requiring MSHSAA to give plaintiff special consideration is a "reasonable accommodation" required under the Rehabilitation Act, or is in fact a fundamental or substantial modification beyond what the Act requires to protect the handicapped. Booth, slip op. at 9.
Accommodation is not reasonable if it either imposes "undue financial and administrative burdens" on a recipient of federal funds, or "requires a fundamental alteration in the nature of [the defendant's] program." School Board of Nassau County, Florida v. Arline, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307, citing Southeastern Community College v. Davis, *665 442 U.S. 397, 410, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979).
The Court has previously found that MSHSAA has an administrative system in place to determine and process individual requests for waiver and protests. The Court has concluded it would not impose undue financial or administrative burdens on MSHSAA or require a fundamental alteration in the nature of MSHSAA's services, programs or activities to require that it make an individual determination whether its age standard should be waived as to plaintiff.
As noted in Booth, to require MSHSAA to evaluate the risk posed by each high school student who exceeds the age standard before excluding him or her from interscholastic activities would result in an undue administrative burden. However, the Rehabilitation Act requires that federally-assisted programs do more for those persons who are within its protection. Thus, the Court concludes that requiring MSHSAA to give individual consideration to plaintiff based on his history of being handicapped is a reasonable accommodation.
Accordingly, plaintiff has at minimum raised a substantial question as to whether he will be entitled to prevail on his claim under the Rehabilitation Act of 1973. This showing is sufficient to meet the third prong of the Dataphase test where, as here, irreparable injury has been shown and the equities strongly favor plaintiff. Ferry-Morse Seed Co., 729 F.2d at 592; Dataphase, 640 F.2d at 113.
42 U.S.C. § 1983. Section 1983 provides that any person who, under color of state law, subjects any citizen of the United States to deprivation of any rights secured by the Constitution or laws of the United States shall be liable to the party injured in an action at law or equity.
This Court has previously held that the MSHSAA engages in state action for purposes of section 1983. ABC League v. Missouri State High School Activities Ass'n, 530 F.Supp. 1033, 1044 (E.D.Mo.), rev'd on other grounds, In re U.S. ex rel. Missouri State High School Activities Ass'n, 682 F.2d 147, 151 (8th Cir.1982). It is clear the decision to declare plaintiff ineligible to play baseball during the 1993-1994 academic year was the result of official policy of the MSHSAA. If it is ultimately found that MSHSAA's decision violated plaintiff's rights under either the ADA or the Rehabilitation Act of 1973, plaintiff has shown a high probability that he will succeed on the merits of his claim under 42 U.S.C. § 1983.
Under the final portion of the Dataphase test, the Court must consider the public interest. There is a clear public interest in prohibiting wrongful discrimination against and allowing equal opportunity for those with disabilities, as evidenced by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. As the Court in Booth commented,
The Supreme Court noted in Alexander v. Choate that Congress perceived discrimination against handicapped persons as "most often the product, not of invidious animus, but rather of thoughtlessness and indifference  of benign neglect." (Citation omitted.) This observation is particularly relevant in a case such as this, which involves not affirmative discrimination, but rather the refusal to accommodate an individual who claims to deserve special treatment based on a past physical or mental impairment.
Booth, slip op. at 8, n. 3.
While there is also a legitimate public interest in regulating interscholastic activities in order to promote fairness and protect the safety and well-being of students, the Court concludes this interest must accommodate the more compelling public interest of prohibiting discrimination against those with disabilities. Accordingly, plaintiff has met his burden to show all four factors set forth in Dataphase, and the Court will issue a preliminary injunction.
Having determined that plaintiff is entitled to preliminary injunctive relief, the Court must now determine the amount of security, if any, which plaintiff must post. Plaintiff is asserting important federal rights in this action. There has been no showing monetary loss will accrue to the MSHSAA as a result of the entry of a preliminary injunction. The *666 Court therefore concludes bond is not required.
An appropriate order will accompany this memorandum.

ORDER
In accordance with the Memorandum filed on this date and incorporated herein,
After careful consideration,
IT IS HEREBY ORDERED that plaintiff's motion for preliminary injunction is GRANTED. [Doc. 2]
IT IS FURTHER ORDERED that defendant shall be preliminarily enjoined from (i) preventing plaintiff from competing in any Hancock High School baseball games or district or state tournament games; and (ii) imposing any penalty, discipline or sanction on any school for which or against which plaintiff competes in these games.
IT IS FURTHER ORDERED that this preliminary injunction shall remain in effect until a hearing is held on plaintiff's request for permanent injunction.
IT IS FURTHER ORDERED that plaintiff shall not be required to post bond.
IT IS FURTHER ORDERED that defendant's motion to dismiss is DENIED. [Doc. 6]
NOTES
[1] In order to be included in the 3A category, a school must have a student population of between three hundred sixty-one (361) and eight hundred ninety-eight (898). Hancock has one of the lowest student populations of any 3A school in Missouri.
[2] School districts have been held to be instrumentalities within the meaning of the ADA. Bechtel v. East Penn School District of Lehigh Co., Pennsylvania, 1994 WL 3396 (E.D.Pa.1994).
[3] The other two factors underlying the age standard, i.e. the desire to reduce competitive advantage resulting from an older student playing, and to discourage students from delaying their education to gain athletic maturity, are not central to this inquiry. The Court has previously found that any competitive advantage resulting from plaintiff's age is de minimis. Further, the evidence is not that plaintiff purposely delayed his education to gain athletic maturity, but that plaintiff's education was delayed because his learning disability was not diagnosed in a timely manner.
[4] MSHSAA contends that it has addressed the needs of over-age students in lower grades, by allowing them to compete with and against students of their own age in higher grades. See By-Law 232.0. MSHSAA argues that it has therefore made reasonable modification of its rules and policies not only for handicapped or disabled students, but also for other students who have been held back in the education. The Court has previously found that this option, while theoretically available to plaintiff through the MSHSAA, was not known to him and was not in fact available because it violates the policy of his high school district. Because an individualized review is required under the Rehabilitation Act, a blanket provision such as that urged by MSHSAA will not necessarily accommodate each and every disabled student who does not meet its age standard.
[5] The Sadler decision appears to apply a rational or reasonable basis standard for applying interscholastic activity association rules to handicapped students, though the opinion does not fully explain its reasoning. The Court concludes a rational or reasonable basis test is inapplicable in this situation, and thus Sadler is not persuasive.
[6] Cavallaro is also factually distinguishable from the present case, as the student seeking modification of the age standard in that case had repeated a year of high school, and thus failed to meet not only the age standard but also the "eight-semester" rule.