40 F.3d 926
 63 USLW 2329, 95 Ed. Law Rep. 867, 3
A.D. Cases 1479,
7 A.D.D. 378, 5 NDLR P 427
 Edward Leo POTTGEN, Appellee,
v.
The MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, Appellant.
National Federation of State High School Associations; Iowa
High School Athletic Association; Nebraska School
Activities Association; South Dakota
High School Activities
Association, Amicus Curiae.
 No. 94-2324.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 16, 1994.
Decided Nov. 16, 1994.
Rehearing and Suggestion for Rehearing En Banc Denied Jan.
24, 1995.*
 
 Mallory V. Mayse, Columbia, MO, argued, for appellant.
 Kenneth M. Chackes, St. Louis, MO, argued (John T. Murray, on the brief), for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN and BEAM, Circuit Judges.
 BEAM, Circuit Judge.
 
 
 1
 The Missouri State High School Activities Association (hereinafter "MSHSAA") appeals the issuance of a preliminary injunction which restrains it from enforcing its age limit for interscholastic sports against Edward Leo Pottgen. Pottgen repeated two grades in elementary school due to an undiagnosed learning disability. By his senior year, this delay in completing his education made him too old to play interscholastic baseball under MSHSAA eligibility standards. In district court, Pottgen challenged the age limit as violating section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, and section 1983. Because we find that Pottgen is not a qualified individual under these statutes, we reverse.
 
 I. BACKGROUND
 
 2
 After Pottgen repeated two grades in elementary school, the school tested him to see whether he needed special classroom assistance. When the school discovered that Pottgen had several learning disabilities, it placed him on an individualized program and provided him with access to special services. With these additional resources, Pottgen progressed through school at a normal rate. It is not clear from the evidence whether he attempted to make up the lost time through summer school or other remedial activities.
 
 
 3
 Pottgen was active in sports throughout junior high and high school. He played interscholastic baseball for three years in high school and planned to play baseball his senior year as well. However, because he had repeated two grades, Pottgen turned nineteen shortly before July 1 of his senior year. Consequently, MSHSAA By-Laws rendered Pottgen ineligible to play.[1] The MSHSAA By-Law states, in relevant part, "A student shall not have reached the age of nineteen prior to July 1 preceding the opening of school. If a student reaches the age of nineteen on or following July 1, the student may be considered eligible for [interscholastic sports during] the ensuing school year."
 
 
 4
 Pottgen petitioned MSHSAA for a hardship exception to the age limit since he was held back due to his learning disabilities. Pottgen struck out. MSHSAA determined that waiving the requirement violated the intent of the age eligibility rule.
 
 
 5
 Pottgen then brought this suit, alleging MSHSAA's age limit violated the Rehabilitation Act of 1973 (the "Rehabilitation Act"), the Americans With Disabilities Act (the "ADA"), and section 1983. The district court granted a preliminary injunction enjoining MSHSAA from "(i) preventing [Pottgen] from competing in any Hancock High School baseball games or district or state tournament games; and (ii) imposing any penalty, discipline or sanction on any school for which or against which [Pottgen] competes in these games." Pottgen v. Missouri State High Sch. Activities Ass'n, 857 F.Supp. 654, 666 (E.D.Mo.1994).
 
 II. DISCUSSION
 A. Mootness
 
 6
 Pottgen has now played his last game of high school baseball. Thus, the portion of the injunction permitting him to play is moot. However, a live controversy still exists regarding the portion of the injunction which prohibits MSHSAA from imposing sanctions upon a high school for whom or against whom Pottgen played. See Wiley v. National Collegiate Athletic Ass'n, 612 F.2d 473, 476 (10th Cir.1979) (graduation of college track athlete did not completely moot injunction allowing him to compete because athlete's victories, records and awards were still at issue), cert. denied, 446 U.S. 943, 100 S.Ct. 2168, 64 L.Ed.2d 798 (1980). In Beck v. Missouri State High Sch. Activities Ass'n, 18 F.3d 604, 606 (8th Cir.1994), we recently found completely moot an appeal involving the denial of a preliminary injunction regarding student eligibility standards. However, because the student in Beck did not play during his ineligible period no permanent records and awards were affected by the district court action.
 
 B. Injunctive Relief
 
 7
 When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir.1981) (en banc). We reverse the issuance of a preliminary injunction only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise." City of Timber Lake v. Cheyenne River Sioux Tribe, 10 F.3d 554, 556 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994).
 
 
 8
 The district court's issuance of a preliminary injunction required the court to determine that Pottgen was a proper plaintiff under the Rehabilitation Act, the ADA and section 1983. Because we find that Pottgen is not an aggrieved party under these statutes, we do not reach MSHSAA's other arguments on appeal.
 
 1. Section 504 of the Rehabilitation Act
 
 9
 MSHSAA appeals the district court's finding that Pottgen could potentially prevail under the Rehabilitation Act. MSHSAA contends Pottgen is not an "otherwise qualified individual" under section 504 of the Rehabilitation Act.
 
 
 10
 Section 504 states that "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[2] 29 U.S.C. Sec. 794(a). In Southeastern Community College v. Davis, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979), the Supreme Court defined an "otherwise qualified individual" as "one who is able to meet all of a program's requirements in spite of his handicap."[3] Courts cannot apply the Davis test to all the requirements; if they did, "no reasonable requirement could ever violate Sec. 504, no matter how easy it would be to accommodate handicapped individuals who cannot fulfill it." Brennan v. Stewart, 834 F.2d 1248, 1261 (5th Cir.1988). Rather, individuals with disabilities need only meet a program's necessary or essential requirements. Simon v. St. Louis County, 656 F.2d 316, 321 (8th Cir.), cert. denied, 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1981).
 
 
 11
 The district court found Pottgen to be an "otherwise qualified" individual because, except for the age limit, Pottgen meets all MSHSAA's eligibility requirements. The court framed the issue as not whether Pottgen meets all of the eligibility requirements, but rather whether reasonable accommodations existed. We disagree. A Rehabilitation Act analysis requires the court to determine both whether an individual meets all of the essential eligibility requirements and whether reasonable modifications exist.
 
 
 12
 Here, Pottgen cannot meet all the baseball program's requirements in spite of his disability. He is too old to meet the MSHSAA age limit. This failure to meet the age limit does not keep Pottgen from being "otherwise qualified" unless the age limit is an essential or necessary eligibility requirement.
 
 
 13
 We find that MSHSAA has demonstrated that the age limit is an essential eligibility requirement in a high school interscholastic program. An age limit helps reduce the competitive advantage flowing to teams using older athletes; protects younger athletes from harm; discourages student athletes from delaying their education to gain athletic maturity; and prevents over-zealous coaches from engaging in repeated red-shirting to gain a competitive advantage. These purposes are of immense importance in any interscholastic sports program.
 
 
 14
 Even though Pottgen cannot meet this essential eligibility requirement, he is "otherwise qualified" if reasonable accommodations would enable him to meet the age limit. See School Bd. of Nassau County v. Arline, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987); Kohl v. Woodhaven Learning Ctr., 865 F.2d 930, 936 (8th Cir.), cert. denied, 493 U.S. 892, 110 S.Ct. 239, 107 L.Ed.2d 189 (1989). Reasonable accommodations do not require an institution "to lower or to effect substantial modifications of standards to accommodate a handicapped person." Davis, 442 U.S. at 413, 99 S.Ct. at 2370-71. Accommodations are not reasonable if they impose "undue financial and administrative burdens" or if they require a "fundamental alteration in the nature of [the] program." Arline, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17 (citations omitted).
 
 
 15
 Since Pottgen is already older than the MSHSAA age limit, the only possible accommodation is to waive the essential requirement itself.[4] Although Pottgen contends an age limit waiver is a reasonable accommodation based on his disability, we disagree. Waiving an essential eligibility standard would constitute a fundamental alteration in the nature of the baseball program. Other than waiving the age limit, no manner, method, or means is available which would permit Pottgen to satisfy the age limit. Consequently, no reasonable accommodations exist.
 
 
 16
 Since Pottgen can never meet the essential eligibility requirement, he is not an "otherwise qualified" individual. Section 504 was designed only to extend protection to those potentially able to meet the essential eligibility requirements of a program or activity. See Beauford v. Father Flanagan's Boys' Home, 831 F.2d 768 (8th Cir.1987), cert. denied, 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988). As a result, the district court erred by granting the injunction based on Pottgen's Rehabilitation Act claim.
 
 2. Title II of the ADA
 
 17
 MSHSAA also appeals the district court's ruling that Pottgen would likely prevail on his ADA claim. MSHSAA contends Pottgen is not a "qualified individual with a disability" under Title II of the ADA.
 
 
 18
 Title II prohibits discrimination by public entities against individuals with disabilities.[5] Congress intended Title II to be consistent with section 504 of the Rehabilitation Act. This desire for consistency is evident from the ADA statutory scheme itself. Enforcement remedies, procedures and rights under Title II are the same as under section 504. See 42 U.S.C. Sec. 12133. In addition, regulations interpreting Title II must be consistent with regulations relating to section 504 of the Rehabilitation Act. See 42 U.S.C. Sec. 12134(b). Consequently, our section 504 analysis necessarily affects our Title II analysis.
 
 
 19
 Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. Sec. 12132. Unlike section 504 of the Rehabilitation Act, the ADA's text itself defines "qualified individual with a disability." It states that a "qualified individual with a disability" means "an individual with a disability, who, with or without reasonable modifications to rules, policies, or practices ... meets the essential eligibility requirements for the ... participation in programs or activities provided by a public entity." 42 U.S.C. Sec. 12131(2).
 
 
 20
 To determine whether Pottgen was a "qualified individual" for ADA purposes, the district court conducted an individualized inquiry into the necessity of the age limit in Pottgen's case. Such an individualized inquiry is inappropriate at this stage. Instead, to determine whether Pottgen is a "qualified individual" under the ADA, we must first determine whether the age limit is an essential eligibility requirement by reviewing the importance of the requirement to the interscholastic baseball program. If this requirement is essential, we then determine whether Pottgen meets this requirement with or without modification. It is at this later stage that the ADA requires an individualized inquiry.
 
 
 21
 The dissent disagrees with this holding and would impose an individualized "essential eligibility requirement" inquiry at the first stage. We think this is not required, and for good reason. A public entity could never know the outer boundaries of its "services, programs or activities." A requirement could be deemed essential for one person with a disability but immaterial for another similarly, but not identically, situated individual.
 
 
 22
 MSHSAA's interscholastic baseball program demonstrates this proposition. The dissent admits that the age requirement is "admittedly salutary" but believes it must fall away for Pottgen because an individualized fact-finding inquiry found him "not appreciably larger than the average eighteen-year-old" and not "a threat to the safety of others." If this is the query, MSHSAA would need to establish a fact-finding mechanism for each individual seeking to attack a program requirement. At that time, MSHSAA would have to show the essential nature of each allegedly offending program requirement as it applies to the complaining individual. The dissent's approach requires thorough evidentiary hearings at each stage of the process. Clearly the ADA imposes no such duty. Indeed, such an approach flies in the face of the Arline Court's statement that "[a]ccommodation is not reasonable if it either imposes 'undue financial and administrative burdens' [on the public entity] or requires 'a fundamental alteration in the nature of [the] program.' " 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17 (citations omitted).
 
 
 23
 Consistent with our Rehabilitation Act analysis, we find MSHSAA has demonstrated that the age limit is an essential eligibility requirement of the interscholastic baseball program.[6] Again, Pottgen alleges he can meet the eligibility requirement if MSHSAA waives it for him. In conformity with our previous finding, we conclude that this is not a reasonable modification.
 
 
 24
 Thus, we find that Pottgen is not a "qualified individual" under the ADA. The district court erred in granting a preliminary injunction based on recovery under this Act.
 
 3. Section 1983 Claim
 
 25
 Finally, Pottgen claims that MSHSAA's treatment of him constituted a section 1983 violation. Section 1983 provides that any person who, under color of state law, subjects any citizen of the United States to deprivation of any rights secured by the Constitution or laws of the United States, shall be liable to the party injured in an action at law or equity. See 42 U.S.C. Sec. 1983. We find that Pottgen cannot establish a deprivation of federally protected rights. His section 1983 claim fails.
 
 III. CONCLUSION
 
 26
 Pottgen is not a qualified individual under these statutes. Consequently, he has no likelihood of success on the merits on these claims. As a result, the district court erred in granting a preliminary injunction prohibiting enforcement of the age limit against Pottgen. We reverse the district court's decision and remand this case for further proceedings consistent with this opinion.
 
 
 27
 RICHARD S. ARNOLD, Chief Judge, dissenting.
 
 
 28
 In my view, the courts are obligated by statute to look at plaintiffs as individuals before they decide whether someone can meet the essential requirements of an eligibility rule like the one before us in the present case. Such an individualized inquiry, I believe, shows that the age requirement, as applied to Ed Pottgen, is not essential to the goals of the Missouri State High School Activities Association. I therefore respectfully dissent.
 
 
 29
 I have little to add to Judge Shaw's excellent opinion for the District Court. For me, this case is largely controlled by the words of the Americans With Disabilities Act of 1990, 42 U.S.C. Sec. 12132, and by regulations issued under the Act. The statute provides, in relevant part, that
 
 
 30
 no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
 
 
 31
 There is no doubt that Ed Pottgen has a learning disability (for which he is now adequately compensating), and that, by reason of this disability, he has become unable to meet the Activities Association's age requirements. The Court today holds, however, that Ed is not a "qualified individual."
 
 
 32
 The statute itself defines this term. "Qualified individual with a disability" means
 
 
 33
 an individual with a disability, who, with or without reasonable modifications to rules, policies, or practices ... meets the essential eligibility requirements for ... participation in programs or activities provided by a public entity.
 
 
 34
 42 U.S.C. Sec. 12131(2). So, by the express words of Congress, it is not necessary for a person to meet all eligibility requirements. Instead, if a proposed modification of those requirements is "reasonable," a person can be a "qualified individual." The question therefore is whether it is "reasonable" to require the Activities Association to modify or waive the age requirement in the case of Ed Pottgen. The age criterion would not have to be abandoned completely: Ed would have been eligible if the requirement had been modified by only thirty-five days. He was that close to complete and literal compliance with all of the Activities Association's rules.
 
 
 35
 I agree with the Court that if a requirement is "essential" to a program or activity, a waiver or modification of that requirement would not be "reasonable" within the meaning of the statute. But how do we determine what is "essential"? The regulations interpreting the statute are of some help in answering that question. Under 28 C.F.R. Sec. 35.130(b)(7) (1994),
 
 
 36
 A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.
 
 
 37
 Was high-school baseball competition in Missouri fundamentally altered when Ed Pottgen was allowed to play one more year? I think not, and here the District Court's findings of fact become important. According to the Activities Association itself, there are three reasons for the age requirement. First, there is a desire to protect the safety of younger athletes against whom an older athlete might compete. Second, the Association wishes to reduce the competitive advantage that results when older students play, because of their presumed greater maturity. And third, the Association wishes to discourage students from delaying their education to gain athletic maturity. There is no contention whatever in the present case that Ed Pottgen deliberately repeated the first and third grades in order to make himself eligible to play baseball another year at age nineteen. The District Court found, moreover, "that any competitive advantage resulting from plaintiff's age is de minimis." 857 F.Supp. at 662 n. 3. The Court further found that the Activities Association made no individualized review of plaintiff's circumstances and gave no consideration to the issue of safety when it denied plaintiff's request for a waiver of the age rule. Finally, the Court found that "plaintiff does not appear to constitute a threat to the safety of others." Id. at 662. Plaintiff is not appreciably larger than the average eighteen-year-old.
 
 
 38
 In other words, the age requirement could be modified for this individual player without doing violence to the admittedly salutary purposes underlying the age rule. But instead of looking at the rule's operation in the individual case of Ed Pottgen, both the Activities Association and this Court simply recite the rule's general justifications (which are not in dispute) and mechanically apply it across the board. But if a rule can be modified without doing violence to its essential purposes, as the District Court has found in the present case, I do not believe that it can be "essential" to the nature of the program or activity to refuse to modify the rule.
 
 
 39
 The Court avoids this issue by holding that "an individualized inquiry into the necessity of the age limit in Pottgen's case ... is inappropriate...." With respect, I find no such principle in the words of the statute. If an eligibility requirement can be reasonably modified to make someone eligible, that person is a qualified individual. In determining this issue, it seems to me entirely appropriate to focus on the effect that modification of the requirement for the individual in question would have on the nature of the program. When the case is looked at from this point of view, it becomes clear that the Association could easily bend to accommodate Ed Pottgen without breaking anything essential. For these reasons, I would affirm the preliminary injunction entered by the District Court.
 
 
 
 *
 Arnold, Chief Judge, McMillian and Murphy, Circuit Judges, would grant the suggestion for rehearing en banc
 
 
 [1]
 Pottgen's high school, Hancock High School, was a member of MSHSAA and had agreed to abide by their eligibility determinations
 
 
 [2]
 For purposes of this inquiry we assume, without deciding, that MSHSAA qualifies as a program or activity receiving federal financial assistance. In addition, all parties agree that Pottgen's learning disabilities are recognized disabilities under both the Rehabilitation Act and the ADA. As a result, it is not necessary to discuss that issue
 
 
 [3]
 In 1992, Congress changed the Rehabilitation Act's term "otherwise qualified handicapped person" to "otherwise qualified individual with a disability." No substantive change was effected
 
 
 [4]
 Other accommodations may exist when a younger student realizes that he will not be able to meet the age requirement when he is a senior. For example, MSHSAA allows eighth grade students to participate on a high school team if they will be ineligible as a high school senior. This accommodation permits students to play for four years at the high school level
 
 
 [5]
 For purposes of this analysis, we assume, without deciding, that MSHSAA qualifies as a public entity
 
 
 [6]
 While a public entity shall not impose eligibility criteria that tend to screen out an individual with a disability, it may do so if "such criteria can be shown to be necessary for the provision of the ... activity being offered." 28 C.F.R. Sec. 35.130(b)(8)