896 F.Supp. 921 (1995)
Brandon Richard ROBERTS, By and Through his parents, Mary RODENBERG-ROBERTS and Richard Roberts, Plaintiffs,
v.
KINDERCARE LEARNING CENTERS, INC., Defendant.
Civ. File No. 3-94-1379.
United States District Court, D. Minnesota, Third Division.
August 24, 1995.
*922 *923 Gregory R. Merz, Thomas Steven Darling, Gray Plant Mooty Mooty & Bennett, Minneapolis, MN, for plaintiffs.
Sheila Ann Engelmeier, Shane Harr Anderson, Steven Jerry Holland, Mackall Crounse & Moore, Minneapolis, MN, for defendant.

MEMORANDUM AND ORDER
MAGNUSON, Chief Judge.

INTRODUCTION
This matter is before the Court to render a verdict regarding Brandon Richard Roberts' discrimination claims brought through his parents, Mary Rodenberg-Roberts and Richard Roberts, against KinderCare Learning Centers, Inc. ("KinderCare"). The case was tried before the Court without a jury August 21 and August 22, 1994. The Roberts claim KinderCare failed to reasonably accommodate Brandon by refusing to admit him into the Apple Valley, Minnesota, KinderCare day care center, and in so doing violated the Minnesota Human Rights Act, Minn.Stat. § 363.03, subd. 3, and the Americans with Disabilities Act, 42 U.S.C. § 12182. Because of the factual findings and discussion below, the Court concludes KinderCare did not fail to reasonably accommodate Brandon in violation of the Minnesota Human Rights Act or the Americans with Disabilities Act.

FINDINGS OF FACT
Brandon Richard Roberts and Brandon's biological sister, Becky, came to live with Richard Roberts and Mary Rodenberg-Roberts in October, 1993, in anticipation of the Roberts' adoption of them. The Roberts adopted Brandon and Becky on October 19, 1994. At times relevant to this case Brandon was four years old. As the result of very unfortunate events that occurred before the Roberts adopted Brandon and which are not related to this case, Brandon had an extremely limited vocabulary, did not play with toys, was developmentally delayed, suffered from seizures, was not toilet trained, committed self-injurious acts, could take up to one and a half hours to eat meals, suffered from an attention-deficit hyperactivity disorder, and had a tendency to "bolt," or run away. Brandon was "disabled" within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2), and the Minnesota Human Rights Act ("MHRA"), Minn.Stat. § 363.01, subd. 13.
Brandon originally attended Children's World, the day care at which Mr. Roberts was employed. By May, 1994, the Roberts had become dissatisfied with the care Brandon *924 had been receiving at Children's World. By then, the Roberts had concluded that Brandon's development might improve if he were in an environment in which he could socially interact with other children and observe the positive behavior of other children. However, Brandon's Individual Education Plan ("IEP") called for a Personal Care Attendant[1] ("PCA") to accompany Brandon and provide one-on-one care to him on a continuous basis. Paul Thinesen, Brandon's treating psychologist, and Ms. Rodenberg-Roberts agreed that Brandon needed one-on-one care for his own safety while at day care.
Although the Roberts had obtained PCA care for Brandon, Mrs. Rodenberg-Roberts testified that there were "problems with the reliability" of PCAs. Indeed, the PCA turnover rate was very high (Brandon has had about 16 PCAs), and therefore Brandon occasionally attended Children's World without a PCA. In the absence of a PCA, a Children's World staff member would take Brandon into the office rather than keep him in the classroom with the other children. Thus, the Roberts did not believe Brandon was receiving the social interaction with other children they felt he needed, and they blamed setbacks to Brandon's general improvement on the care he was receiving at Children's World. Additionally, the Roberts believed Children's World permitted other children to tease Brandon and on at least one occasion Brandon "bolted" into the parking lot.
On May 11, 1994, Ms. Rodenberg-Roberts contacted KinderCare Learning Centers, Inc. ("KinderCare"), in Apple Valley, Minnesota, and spoke with Center Director Ann Marie Donahue to enroll Brandon. KinderCare is a for-profit corporation operating day care centers throughout the United States, including the State of Minnesota. KinderCare provides a "public accommodation" within the meaning of the ADA and the MHRA. KinderCare generally provides group child care, as opposed individualized, or one-on-one child care. Ms. Rodenberg-Roberts was acquainted with the Apple Valley KinderCare; the Roberts had enrolled Becky, Brandon's sister, there, and were satisfied with the care KinderCare had been providing her. Becky, too, was a special-needs child, having Spina Bifida and a tendency to run away. However, Becky did not require the one-on-one care that Brandon required.
Ms. Donahue informed Ms. Rodenberg-Roberts that the center had room for another child. Ms. Rodenberg-Roberts advised Ms. Donahue of Brandon's special needs, including his continuous need for one-on-one personal care while participating in day care as directed by his IEP. Among other things, she also informed Ms. Donahue that Brandon had a traumatic brain injury, a seizure disorder, a tendency to bolt, but that he was "not terribly disruptive." Ms. Rodenberg-Roberts also advised Ms. Donahue that they had been dissatisfied with the decision of Children's World's to provide Brandon's one-on-one care in the office with a staff member when his PCA was absent.
Ms. Rodenberg-Roberts requested that Ms. Donahue enroll Brandon at the Apple Valley KinderCare on a "full-time" basis. However, Ms. Rodenberg-Roberts did not suggest that "full-time" had anything but its common meaning, and Ms. Donahue believed Ms. Rodenberg-Roberts was seeking day care for Brandon for 40 to 50 hours per week. Ms. Rodenberg-Roberts' request for "full-time" child care without any attempt to clarify her meaning, despite further discussions and correspondence with KinderCare regarding its responsibility to provide one-on-one care for Brandon at all times his PCA would be absent, caused KinderCare decision-makers reasonably to conclude Ms. Rodenberg-Roberts was requesting Brandon be enrolled for 40 hours per week. Ms. Rodenberg-Roberts also advised Ms. Donahue that while a PCA ordinarily would accompany Brandon, the Roberts currently did not have a PCA for Brandon, and that they were seeking to acquire one who would accompany Brandon to KinderCare for 30 hours per week. Ms. Roberts requested KinderCare provide the one-on-one care Brandon required *925 for all times a PCA did not accompany him. Thus, based on Ms. Rodenberg-Roberts' representations to KinderCare about the need for "full-time" day care service and the understanding that PCA service is occasionally disrupted due to illness, turnover, or as anticipated from past PCA unreliability to the Roberts, and the additional fact that the Roberts sought PCA service for only about 30 hours per week, KinderCare would likely have to provide substantial one-on-one care for Brandon.
KinderCare does not provide one-on-one care on a regular basis for any child, but does provide one-on-one care for brief periods due to injuries or immediate disciplinary problems. The wages of a KinderCare full-time aid employed for Brandon's one-on-one care would have been about $200 per week, or nearly double the revenue KinderCare would earn in tuition for Brandon's care. Never having faced the issue of substantial one-on-one care, Ms. Donahue contacted Dee Ann Besch, a KinderCare regional director. Several telephone discussions took place between Ms. Besch, Ms. Donahue and Ms. Rodenberg-Roberts. On May 20, 1994, Ms. Donahue informed Ms. Rodenberg-Roberts that KinderCare would enroll Brandon, but that Brandon could attend KinderCare only when accompanied by a PCA; KinderCare would not provide an employee to care for Brandon on a one-on-one basis in the absence of a PCA. Ms. Rodenberg-Roberts testified that both she and her husband needed to work, and therefore it would be unacceptable to them to come to assist with Brandon at KinderCare or pick up Brandon in the event his PCA would become ill or would otherwise be unable to accompany Brandon at KinderCare.
One year before KinderCare's decision here, it had distributed to its center directors a list of "helpful guidelines" for enrolling children with disabilities. Pl.'s Ex. 4. Those guidelines included the center director's meeting with the child and family in the center before enrollment, observing the child in the classroom, assessing the staff person's ability to cope with the disability and the child's ability to adapt to the group, discussing the potential enrollment with a supervisor and with the staff, and enrolling the child for a "trial period." There was no evidence that KinderCare intended these to be anything more than what they purport to be: "helpful guidelines." Ms. Donahue did not invite Brandon for a meeting with KinderCare staff at the center, did not observe him in the classroom, and did not follow any of the other guidelines before making the decision concerning Brandon's enrollment.
KinderCare also has produced a reference booklet, KinderCare and the ADA, The Americans With Disabilities Act and the Enrollment Process. Pl.'s Ex. 5. This booklet contains KinderCare's policy statement regarding care for children with disabilities. That statement indicates that KinderCare "reviews each child's situation on a case-by-case basis to determine if the child's needs can be met in the KinderCare setting." The booklet directs KinderCare employees to "[a]scertain if you have sufficient resources for the child and her unique needs ... while still having the caring responsibility for the other children in the group." (emphasis in original). The booklet indicates that enrollment for a trial period is "usually" a good idea, but that a KinderCare director should "not put off telling the family once [the director] know[s] the situation is not going to work." (emphasis in original).

DISCUSSION
The Roberts brought this action on behalf of Brandon, alleging that KinderCare's acceptance of Brandon only when accompanied by a PCA violates the ADA and the MHRA. They argue that KinderCare did not make reasonable efforts to accommodate Brandon's needs, and that KinderCare's policies "dictate" that KinderCare must not make an admission decision regarding a disabled child "until the child has had at least two visits to the center." Essentially, they argue that because KinderCare did not follow its own policy regarding enrollment of disabled children, KinderCare failed to reasonably accommodate Brandon or otherwise discriminated against Brandon. The Roberts seek injunctive relief, as well as compensatory and punitive damages.

*926 I. Duty to Provide One-on-One Care
KinderCare argues that it had no duty under the ADA or the MHRA to provide one-on-one care to Brandon because providing such care would alter the nature of KinderCare's business, and would place an undue financial burden on KinderCare. The Roberts argue that KinderCare is in the business of providing child care generally, and that providing one-on-one child care therefore would not affect its business function. The Roberts also argue that KinderCare would have no financial burden to provide additional staffing "on most days," because the absence of Brandon's PCA would have been "rare." Additionally, they argue that KinderCare has "numerous mechanisms in place to provide replacement staffing on a[n] emergency basis;" that KinderCare could have directed a substitute teacher or the center director to provide one-on-one care in the absence of Brandon's PCA.

A. Fundamentally Altering the Service Provided
The ADA prohibits an entity that provides a public accommodation from failing to take steps to ensure disabled persons are not denied service "unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the ... service ... or accommodation being offered." 42 U.S.C. § 12182(b)(2)(A)(iii). See also § 12182(b)(2)(A)(ii). The MHRA contains the same qualifying language. Minn.Stat. § 363.03, subd. 3(c)(2) and (3).
This Court has no difficulty concluding that requiring KinderCare to provide one-on-one child care would fundamentally alter the nature of its service. The undisputed evidence at trial establishes that there are at least two distinct types of child care service: group child care and individual child care. KinderCare is in the group child care business and does not seek to provide individual child care. It does not provide one-on-one child care on a regular basis to any child except as necessary to deal with temporary, urgent needs. Requiring KinderCare to provide one-on-one service essentially places it into a child care market it did not intend to enter.
The Court is unpersuaded by the Roberts' argument that because KinderCare is in the business of providing child care, requiring one-on-one child care would not fundamentally alter its service. The Roberts construe "service" too broadly. See, e.g., Easley by Easley v. Snider, 36 F.3d 297, 305 (3rd Cir. 1994) (finding shift from the provision of attendant care services to personal care services would alter the fundamental focus of the program); Pottgen v. Missouri State High School Activities Association, 40 F.3d 926 (8th Cir.1994) (holding that modifying the defendant's athletic program by waiving its maximum age limit of eighteen years to permit the nineteen year old plaintiff to play baseball would constitute a fundamental alteration to the nature of the baseball program under the Rehabilitation Act); Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) (holding that requiring a college to modify its clinical nursing program to accommodate a woman with a hearing impairment would fundamentally alter the program by converting it from a clinical program into a program of academic classes). "The rule does not require modifications to the legitimate areas of specialization of service providers." 28 C.F.R. Pt. 36, App. B. While requiring KinderCare to provide one-on-one child care would still leave it in the child-care business, it would fundamentally alter the nature of the service KinderCare provides.

B. Undue Burden
The ADA and MHRA also do not require an entity offering a public accommodation to endure an undue burden in order to provide its service to a disabled person. 42 U.S.C. § 12182(b)(2)(A)(iii); Minn.Stat. 363.03, subd. 3(c)(3). The Roberts point to KinderCare's $2.4 million 1994 first quarter net income for the proposition that provision of one-on-one service would not impose an undue financial burden on KinderCare.
To determine whether an action would result in an undue burden, the Court considers several factors: the nature and cost of the action; the financial resources of the site involved; the number of persons employed at the site; the effect on expenses and resources; the administrative and financial *927 relationship of the site to the corporation; and, if applicable, the overall financial resources of the parent corporation and the number of its facilities. 28 C.F.R. § 36.104. KinderCare argues it would have to hire a full-time care-giver to ensure one-on-one care for Brandon on those dates and times his PCA does not accompany him. The Roberts argue that a part-time employee would be sufficient.
The evidence revealed that PCA care is unpredictable, at best. Certainly, KinderCare would not be able to predict those dates Brandon's PCA would be ill or through some other circumstance unable to accompany Brandon. The Court agrees that to ensure the one-on-one care Brandon needed likely would have required KinderCare to employ a full-time care-giver. The evidence revealed that KinderCare would pay this employee approximately $200 per week, plus provide benefits. The evidence also revealed that KinderCare would have received $105 per week in tuition for Brandon's care.
The Roberts do not dispute that the Apple Valley KinderCare operates "on a shoestring budget," and offered no evidence contrary to trial testimony indicating that the $95 per week loss for Brandon's care would constitute a substantial financial detriment to the site. Additionally, the evidence established that KinderCare has recently emerged from bankruptcy.
The Roberts argument that KinderCare could simply transfer the center's director or some other staff member to provide Brandon's one-on-one care without any cost is unpersuasive. Ms. Donahue testified that in those rare events that she, as center director, must serve as a replacement for an absent teacher for whom no substitute is available, her work as director simply piles up and she must work into the night to compensate. Because of the frequent one-on-one service KinderCare would be required to provide in lieu of Brandon's absent PCA, simply juggling staff is not a quick, cost-free fix to the problem. The facts produced at trial relevant to issues listed above from 28 C.F.R. § 36.104, point to a finding that requiring KinderCare to provide one-on-one care to Brandon in the absence of his PCA would impose an undue financial or administrative burden on KinderCare; thus, the accommodation the Roberts sought was not a reasonable accommodation within the meaning of the ADA or the MHRA.

II. Duty to Provide Day Care Services Without One-on-One Care
The Plaintiff presented evidence at trial challenging Brandon's actual need for one-on-one care due to Brandon's improvement. However, it is undisputed that KinderCare was required at least to incorporate Brandon's existing IEP into the care it provided him, if not to follow the IEP directly. The evidence established that Brandon's mother, his treating psychologist and his existing IEP, all indicated that Brandon required one-on-one care for his own safety. KinderCare certainly had no duty to ignore Brandon's safety needs, or to seek ways to circumvent those needs in order to gain his enrollment.

III. Duty to Follow KinderCare Guidelines
Finally, the Roberts argue that had KinderCare followed its own guidelines for enrolling disabled children, it might have discovered that Brandon did not really need one-on-one care after all. The ADA and the MHRA require a public accommodation to reasonably accommodate a disabled person. The Roberts have failed to establish that the ADA or the MHRA requires KinderCare to follow its own "helpful guidelines" as a way to satisfy its reasonable accommodation duty. They also have failed to prove that following the guidelines would have been useful. Indeed, the express purpose of the guidelines is help KinderCare directors to determine "when [KinderCare] can serve a child's best interest and when [it] cannot." Here, according to all of the evidence and certainly all of the information available to KinderCare, Brandon needed one-on-one care, Brandon's mother insisted KinderCare provide that care for substantial periods, and KinderCare does not provide the sort of one-on-one care requested by Ms. Rodenberg-Roberts. Inviting Brandon to the center to observe him or offering a trial enrollment would change *928 neither Brandon's need for one-on-one care nor KinderCare's policy not to provide one-on-one care on a regular basis for any child. The Court is persuaded by KinderCare's argument that the statutes at issue here do not impose a duty to follow company guidelines when doing so would not affect the relevant facts.

IV. Damages
Because of the factual findings and discussion above, the Court need not determine damages in this case. The Court notes, however, that the Roberts have not supported their claim for compensatory damages in any event. Mr. Roberts testified that Brandon's temporary setbacks to his general behavioral improvement began when Brandon's care declined at Children's World. Additionally, Mr. Roberts testified that Brandon was not even aware of the Roberts' attempt to enroll him at KinderCare. Paul Thinesen, Brandon's treating psychologist testifying on the Roberts' behalf, stated only that Brandon's behavior changed temporarily "for the bad" and that Brandon was "upset" because he was no longer in a group setting. Moreover, Mr. Thinesen also testified that any change in Brandon's environment, including becoming enrolled at KinderCare, also would have resulted in the immediate temporary setback to Brandon's progress.
The Roberts' have simply failed to provide substantial evidence that KinderCare's decision regarding Brandon's enrollment caused anything more than a minor, temporary setback. Particularly, they have failed to present any evidence that even the minor temporary delay in Brandon's development was more likely caused by KinderCare's enrollment decision than the allegedly deficient care Brandon began to receive at Children's World. Certainly the Roberts have not presented clear and convincing evidence that KinderCare showed a willful indifference to the rights or safety Brandon, thus punitive damages also would not be warranted here  even on a finding of discrimination.

CONCLUSIONS OF LAW
Based on the foregoing discussion and based on the facts of this case, the Court concludes that KinderCare had no legal duty under the ADA or the MHRA to provide one-on-one care for Brandon during those periods Brandon would be receiving day care services at KinderCare but during which there would be no PCA accompanying him. Neither the ADA nor the MHRA impose on KinderCare a duty to agree to provide one-on-one child care where, as here, such provision is likely to impose an undue financial or administrative burden on KinderCare and would shift KinderCare's business from providing group child care to providing individualized, one-on-one care to Brandon for substantial periods. Additionally, neither the ADA nor the MHRA require KinderCare to have offered Brandon day care services without one-on-one care. Brandon's mother  who is employed in a field involving children with disabilities and who has a substantial education and background in social work  Brandon's IEP, and Brandon's treating psychologist all indicate that Brandon needed one-on-one care for his own safety, and Brandon's mother communicated that need to KinderCare.
KinderCare also had no legal duty under the ADA or the MHRA to meet with Brandon before determining it would condition his enrollment at KinderCare on his accompaniment by a PCA, nor did it have a duty to offer Brandon enrollment for a trial period. Meeting with Brandon or providing trial enrollment would have altered neither the IEP nor KinderCare's duty to fashion its care for Brandon according to it. Offering Brandon enrollment and permitting him to be accompanied by a PCA during all times he was present at KinderCare was itself a reasonable accommodation. The Roberts have not proven by a preponderance of evidence that KinderCare's decision regarding Brandon's enrollment violated the ADA or the MHRA.
Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:
The Clerk shall enter judgment in favor of the KinderCare Learning Centers, Inc., on both claims; KinderCare's oral motion for judgment as a matter of law, made at the *929 close of the Plaintiff's case in chief, is denied as moot.
LET JUDGMENT BE ENTERED ACCORDINGLY.
NOTES
[1] A "Personal Care Attendant" is a personal attendant who is ordinarily employed to provide individual medical care as needed on a case-by-case basis. Brandon's Personal Care Attendant was selected by the Roberts and paid by government funds.