**Kelvin Tyjuan REAVES, et al., Plaintiffs,**

v.

**Richard P. MILLS, et al., Defendants.**

**No. 95–CV–6561T.**

United States District Court,
W.D. New York.

Nov. 10, 1995.

Joyce Barbara Berkowitz, Rochester, NY, for Kelvin Tyjuan Reaves, by his mother and next friend, Doretha Reaves, on his behalf.

Elizabeth J. McDonald, Assistant Attorney General of State of New York, Rochester, New York, for Richard P. Mills, in his official capacity as Commissioner of Education of the State of New York, New York State Education Department, New York State Public High School Athletic Association, Inc., Eligibility Committee of New York State Public High School Athletic Association, Inc., Section V Eligibility Committee of New York, State High School Athletic Association, Inc.

**DECISION and ORDER**

TELESCA, Chief Judge.

*INTRODUCTION*

Plaintiff Doretha Reaves brings this action on behalf of her son Kelvin Reaves pursuant to Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, alleging that Kelvin has been discriminatorily denied eligibility to participate in interscholastic high school sports by reason of his alleged disability of mild mental retardation.

Kelvin, who turned nineteen years of age on August 16, 1995, was found ineligible to participate in interscholastic sports pursuant to a New York State regulation which prohibits students who turn nineteen before September 1 from participating in those activities. Plaintiff alleges that Kelvin was classified as "educable mentally retarded" at eight years of age and due to this disability he was forced to repeat the first grade. As a result, he remained one year behind the grade level for students of his age and turned nineteen years of age prior to his senior year in high school.

Plaintiff seeks a preliminary injunction[1] directing the defendants, the New York State Education Department ("Education Department") and Education Department Commissioner Richard Mills, to waive the age requirement for Kelvin and allow him to play in a football game scheduled to take place on November 11, 1995 and to participate in interscholastic sports for the remainder of the academic year. The Education Department and Commissioner Mills oppose plaintiff's motion, arguing that her claim is not cognizable under the ADA and, therefore, that injunctive relief is inappropriate.[2]

For the reasons set forth below, plaintiff's applications to proceed *in forma pauperis* and for a temporary restraining order are denied.

*BACKGROUND*

Kelvin Reaves was born on August 16, 1976 and entered kindergarten in the Rochester City School District in 1982. In the fall semester of 1984, Kelvin was referred to the Committee on Special Education for evaluation and was classified as "educable mentally retarded" and was placed in special education classes. *See* Addendum A to Plaintiff's Memorandum of Law in Support of Temporary Restraining Order and Preliminary Injunction ("Plf's Memo."). While enrolled in middle school, Kelvin's status was reexam-

---

1. Although plaintiff requests a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a), the immediate relief sought is essentially a temporary restraining order pending the outcome of the underlying request for a preliminary injunction.

2. The New York State Attorney General appears only on behalf of defendants the New York State Department of Education and Commissioner Mills.

ined and he was no longer classified as "educable mentally retarded." Affirmation of Doretha Reaves in Support of Motion to Proceed *In Forma Pauperis* ¶¶ 3, 4.

Thereafter, Kelvin was placed in regular classes and he is presently attending Edison Technical High School. At Edison, Kelvin has been a member of the junior varsity and varsity level football and basketball teams and has not been denied the opportunity to play these sports based upon his alleged mental retardation. Plaintiff claims that although Kelvin is not classified as "mentally retarded", he continues to experience learning difficulties and relies on team sports as an outlet for his energy and talents.

Realizing that Kelvin would turn nineteen in August 1995, prior to his senior year at Edison, the Athletic Director at Edison contacted the New York State Public High School Athletic Association and attempted to obtain a waiver of the eligibility requirement for Kelvin. Addendum B to Plf's Memo. The requirement, set forth at 8 N.Y.C.R.R. § 135.4, prohibits students who turn nineteen years of age before September 1 of an academic year from participating in interscholastic sports during that year. That request was denied in January 1995 and on appeal to the Section V Executive Committee on March 16, 1995. Kelvin's parents have appealed these determinations to the Commissioner of the New York State Education Department but have not yet received a response.

## DISCUSSION

■ Title II of the Americans With Disabilities Act provides that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. A "qualified individual with a disability" refers to "an individual with a disability who, with or without reasonable modifications to rules, policies or practices, ... meets the essential eligibility requirements for ... the participation in programs or activities provided by a public entity." *Id.* § 12131(2).

Plaintiff claims that Kelvin Reaves is a disabled individual under the ADA and that the defendants have discriminatorily denied her request that the age limitation applicable to participation in interscholastic sports be waived to accommodate his disability. However, since plaintiff concedes that Kelvin is no longer classified as "educable mentally retarded" by the Rochester City School District, it is questionable whether he is a disabled individual entitled to protection under the ADA. *See* 42 U.S.C. § 12102(2).

Further, the State's limitation for participation in interscholastic sports is based upon a student's *age,* not his or her mental abilities. Therefore, the rule is applied uniformly among the student population regardless of whether a student has a mental disability. It is undisputed that until he turned nineteen years of age, Kelvin fully participated in interscholastic sports at Edison, even while laboring under his alleged disability. Clearly, he was only barred from playing sports once he turned nineteen in August 1995.

This Court's decision in *Cavallaro by Cavallaro v. Ambach,* 575 F.Supp. 171 (W.D.N.Y.1983), although involving § 794 of the Rehabilitation Act, is directly applicable to this case. In *Cavallaro,* the plaintiff also sought an injunction directing New York State to waive the age limitation for participation in interscholastic sports set forth in 8 N.Y.C.R.R. § 135.4. I denied the plaintiff's request for a preliminary injunction primarily on the ground that he was not "otherwise qualified" to play organized sports because he had turned nineteen years of age—a requirement which had no relation to his alleged disability and which, therefore, did not violate the Rehabilitation Act. *Id.* at 175. As I noted in *Cavallaro,* the age limitation contained in § 135.4 is designed to prevent more experienced and physically mature student athletes from gaining an advantage over younger athletes. The identical regulation is at issue in this case.

■ Plaintiff's attorney claims that my decision in *Cavallaro* is inapposite because it addressed the legality of § 135.4 under the Rehabilitation Act and not under Title II of

the ADA. Plaintiff's narrow reading of the ADA ignores its plain statutory language, which provides that:

> The remedies, procedures, and rights set forth in section 794a of Title 29 [section 504a of the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title.

42 U.S.C. § 12133. Accordingly, this Circuit has examined ADA claims using the same analytic framework applicable to Rehabilitation Act claims. *See, e.g., Staron v. McDonald's Corp.*, 51 F.3d 353, 355–56 (2d Cir. 1995). *Accord Sandison v. Michigan High School Athletic Association,* 64 F.3d 1026, 1036 (6th Cir.1995) (utilizing analytic framework under the Rehabilitation Act to examine a claim under Title II of the ADA). The Rehabilitation Act was enacted to prohibit discrimination in the provision of services to disabled individuals participating in *federally funded programs. See* § 504 (codified at 29 U.S.C. § 794). The ADA was enacted to expand the protections contained in the Rehabilitation Act to non-federally funded programs and services. Therefore, plaintiff's argument makes a distinction with no difference.

Both the United States Courts of Appeals for the Sixth and Eighth Circuits have declined to enjoin the application of similar state regulations under Title II the ADA. *Sandison,* 64 F.3d at 1036–37 (6th Cir.1995); *Pottgen v. Missouri St. High School Activities Association,* 40 F.3d 926, 930–31 (8th Cir.1994). In both *Sandison* and *Pottgen,* the age limitations in question were found to be "essential eligibility requirements" for participation in high school sports programs and, regardless of their alleged disabilities, the plaintiffs in those cases did not meet these basic age requirements. *Pottgen,* 40 F.3d at 930–31; *Sandison,* 64 F.3d at 1036. Accordingly, the courts found that plaintiffs were unlikely to succeed on the merits of their claims and denied their requests for injunctive relief.

I also note that although plaintiff has known since March 16, 1995 of the New York State Public High School Athletic Association's decision to declare Kelvin ineligible to play interscholastic sports during the 1995–1996 academic year, she brings this application only two days before the *last* football game of the school year. *See* Addendum B to Plf's Memo. Under these circumstances, it is questionable whether a true emergency exists justifying the issuance of the drastic relief plaintiff seeks.

Having examined plaintiff's application for a temporary restraining order and the State's response thereto, I find that plaintiff has failed to demonstrate the prerequisites for the issuance of injunctive relief in this Circuit. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). Accordingly, plaintiff's application for a temporary restraining order is denied.

WHEREFORE, plaintiff's applications to proceed *in forma pauperis* and for a temporary restraining order are denied.

ALL OF THE ABOVE IS SO ORDERED.