United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 97-2379

Mary Davis, Individually and as next        *
friend for a minor Shane Davis;            *
Bobby D. Davis, Individually and as        *
next friend for a minor Shane Davis,       *
                                           *
        Plaintiffs - Appellants,           *
                                           *  Appeal from the United States
        v.                                 *  District Court for the
                                           *  Eastern District of Missouri.
Francis Howell School District;            *
Roger Russell; Vicky Stewart;              *
Joan Powlishta,                            *
                                           *
        Defendants - Appellees.            *
                                        _____

                        Submitted: January 12, 1998
                             Filed:  March 12, 1998
                                        _____

Before WOLLMAN, BRIGHT, and MURPHY, Circuit Judges.
                                        _____

MURPHY, Circuit Judge.

        Mary and Bobby Davis sued the Francis Howell School District, claiming that
its refusal to administer to their son Shane his prescribed dose of Ritalin SR to treat an
attention deficit hyperactivity disorder (ADHD) violates Title II of the Americans with
Disabilities Act (ADA), 42 U.S.C. §§ 12131 et seq., § 504 of the Rehabilitation Act,

29 U.S.C. § 794, and 42 U.S.C. § 1983. The district court[1] granted summary judgment to the school district, and the Davises appeal. We affirm.

Shane's treating physician has prescribed a daily dosage of 360 milligrams of Ritalin SR to control his symptoms of ADHD, up to 120 milligrams of which must be administered during the school day in one or two doses. The nurse at Shane's elementary school, Joan Powlishta, had been administering his school time dose for over a year when she expressed concern to Mrs. Davis that his prescription might be dangerous or harmful because it far exceeded the recommended maximum of 60 milligrams in the Physician's Desk Reference (PDR).[2] After hearing a news story in March 1996 about a nurse in a nearby school district who had refused to administer a high dosage of Ritalin prescribed by the same doctor, Powlishta consulted the district's Nurse Coordinator and its regular consulting pediatrician about the safety of Shane's prescription; both agreed with Powlishta that the prescription was excessive.

Although the Davises provided a second doctor's opinion that the prescribed amount of Ritalin was not having any harmful effects on Shane, Powlishta notified them on April 12, 1996 that she would no longer administer his school time dose because his prescription exceeded the maximum recommended in the PDR, and the Assistant Superintendent supported her position when the Davises appealed to him. According to the district's policy on medication procedures, the school nurse has the right and obligation to question and verify potentially inappropriate prescriptions and "to refuse to give any medication that he/she feels does not meet the criteria established in Board Policy for giving medications." The school district offered to allow one of the Davises

---

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

[2]Powlishta's predecessor administered Shane's Ritalin from January until August 1994, when she was replaced by Powlishta. Powlishta's recollection was that she first raised her concerns with Mrs. Davis sometime during the 1995-96 school year.

or their designee to come to the school to administer the medicine, and Mary Davis, who is a trained nurse, rearranged her work schedule in order to do so or else arranged for Shane's grandmother to give him his school time dose.

The Davises sued the school district alleging that its refusal to administer the drug as prescribed violated Title II of the ADA and § 504 of the Rehabilitation Act, and deprived them and their son of rights protected by § 1983. The district court initially granted them a temporary restraining order, but its denial of their request for a preliminary injunction was affirmed on an earlier appeal. See Davis v. Francis Howell Sch. Dist., 104 F.3d 204 (8th Cir. 1997). Summary judgment was later granted to the district on the basis that the plaintiffs had not produced evidence that Shane had been discriminated against because of a disability and that the alternative arrangement was a reasonable accommodation as a matter of law. The court also ruled that the Davises had no actionable federal statutory or fourteenth amendment claims under § 1983.

A grant of summary judgment is reviewed de novo. See Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 270 (8th Cir. 1996). It will be affirmed if the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 268 (8th Cir. 1993). If the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The school district argues that summary judgment was proper because there was no evidence that Shane was treated differently on the basis of his disability. The district contends that it decided to stop administering Shane's Ritalin because the size of his prescribed dosage conflicted with its policy of administering medication in conformity with the PDR in order to protect student health and minimize potential

liability. The district asserts that its policy is nondiscriminatory. Under the policy many students with disabilities receive Ritalin from the school nurse in doses below the PDR maximum, and requests by nondisabled students for the administration of prescriptions in conflict with PDR recommendations are denied.

The Davises argue that summary judgment was not appropriate because issues of material fact were raised as to whether the school district discriminated against Shane by refusing to modify its policy and whether the alternatives it offered reasonably accommodated his disability. They claim that the district's refusal to give Shane his medication because his ADHD requires a dosage above the PDR recommendation amounts to disability-based discrimination. Their position is that Shane's need for a high dosage of Ritalin to control his ADHD symptoms cannot be distinguished from his disability.

Under both Title II and § 504, a plaintiff must show that he was a qualified individual with a disability and that he was denied the benefits of a program, activity, or services by reason of that disability. See 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The Davises have not offered evidence that the school district's action was taken because of Shane's disability rather than because of its policy and underlying concerns about student health and potential liability. They have therefore failed to establish a required element of their claims. See DeBord v. Board of Educ., 126 F.3d 1102, 1105-06 (8th Cir. 1997); cf. Davis, 104 F.3d at 206 (plaintiffs did not establish likelihood of succeeding on the merits because they did not show school district acted because of disability). Although the Davises question the wisdom of the district's policy and its rationale, they have not challenged the truthfulness of its stated reasons for its decision. They cannot show that the district's policy is discriminatory because it "applies to all students regardless of disability" and rests on concerns "unrelated to disabilities or misperceptions about them." DeBord, 126 F.3d at 1105. Because the school district's refusal to administer Shane's Ritalin was based on the conflict between the size of his prescribed dosage and the district's neutral policy, rather than on the type of disability

-4-

Shane has or its severity, summary judgment was properly granted on the Davises' Title II and § 504 claims. See id. at 1105, 1106.

The Davises also argue that the district's policy and stated concerns about student harm and future liability do not excuse its duty to accommodate Shane's disability under the statutes. Under the Rehabilitation Act, reasonable accommodations may be required when a student with a disability is denied meaningful access to a benefit, see Alexander v. Choate, 469 U.S. 287, 301-02 (1985), and Title II regulations require reasonable modifications in policies when necessary to avoid discrimination on the basis of disability unless doing so would fundamentally alter the nature of the service, see 28 C.F.R. § 35.130(b)(7), or would create undue financial and administrative burdens, see Pottgen v. Missouri State High Sch. Activities Ass'n, 40 F.3d 926, 930 (8th Cir. 1994) (quoting School Bd. of Nassau County v. Arline, 480 U.S. 273, 287 n.17 (1987)). This court has not determined whether the failure to make reasonable modifications in a policy is itself discrimination even where the policy and its rationale cannot be shown to be discriminatory. See DeBord, 126 F.3d at 1106. Compare Weinreich v. Los Angeles County Metro. Transp. Auth., 114 F.3d 976, 979 (9th Cir. 1997) (reasonable modifications required only where individual with disability is denied meaningful access to a benefit on the basis of that disability), cert. denied, 118 S.Ct. 423 (1997), with McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453, 460 (6th Cir. 1997) (en banc) (showing that public entity could have reasonably accommodated disability but refused is sufficient to show actions taken because of disability).

Even if the school district were required to modify its procedure for the administration of medication to accommodate Shane's prescription, its offer to allow the Davises or their designee to give Shane his Ritalin during the school day is a reasonable accommodation as a matter of law. See DeBord, 126 F.3d at 1106. The Davises' alternative proposal that the district waive its policy is not reasonable because it would impose undue financial and administrative burdens on the district by requiring

it to determine the safety of the dosage and the likelihood of future harm and liability in each individual case.  See id.; cf. Pottgen, 40 F.3d at 931 (individual waiver of an essential eligibility requirement is not required due to administrative and financial burdens involved); McPherson, 119 F.3d at 462 (waiver is unreasonable where case-by-case determinations are "near-impossible" and "would impose an immense financial and administrative burden").  By offering an alternative arrangement the district did not prevent Shane from receiving his medication and reasonably accommodated his disability as a matter of law.  See DeBord, 126 F.3d at 1106.

The Davises also claim that the school district deprived them of their statutory and fourteenth amendment rights under color of state law.  See 42 U.S.C. § 1983.  The Davises' cannot pursue statutory claims under § 1983 when they have failed to show a violation of the underlying statutes.  See DeBord, 126 F.3d at 1106-07.  The Davises also have no actionable fourteenth amendment claims because they have not shown that Shane was treated differently from other students with prescribed dosages exceeding the PDR maximum, that the district's action was not rationally related to its interests in protecting student health and preventing future liability, see id. at 1107, or that the district's refusal interfered with their right to determine their child's medical care, see Davis, 104 F.3d at 206.

Appellants attempt to distinguish the DeBord decision on the ground that the DeBords were seeking to have the school nurse administer an excess dose for the first time while Shane had previously received his prescribed dosage for over two years without incident or complaint.  This factual difference is not sufficient to distinguish this case from DeBord.  Both there and here the school districts set forth the same neutral concerns in support of their refusal to administer medication in excess of the PDR maximum and the plaintiffs failed to produce evidence that the refusal was actually based on the students' ADHD.  See DeBord, 126 F.3d at 1105.

Since the school district was entitled to summary judgment on all of the plaintiffs' claims, the judgment of the district court is affirmed.

BRIGHT, Circuit Judge, concurring separately.

I concur as the decision, DeBord v. Board of Educ., 126 F.3d 1102 (8th Cir. 1997), governs this case. However, I question the rationale that the amount of medication necessary for treatment of ADHD does not relate to a student's disability. This court articulated its reasoning in DeBord as follows:

> Although [the student] requires Ritalin to treat her disability, it is undisputed that the reason for [the student's] high dosage is probably her metabolism, not the severity of her disability. [The student's] own doctor and others stated the amount of Ritalin needed to treat ADHD is unrelated to the severity of the disorder in any particular patient. Thus, the policy does not discriminate against the severely disabled, as the DeBords assert.

126 F.3d at 1105.

The medical testimony in this case is similar to that in DeBord. While the medical cause/effect relationship may be unknown, nevertheless to treat Shane's disability the doctor prescribes a high dosage. That treatment is for his disability. Thus, it seems to me that if the school administers adequate medication for one child's disability and inadequate medication for another child's similar disability, the school policy discriminates.

However, assuming a disability situation for Shane greater than that for other students needing medication to treat their ADHD disabilities, I agree that the school district has made a reasonable accommodation for Shane's disability.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.